FILE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BUWLUS A. MUHAMMAD,                     :
                          Plaintiff    :        Civil No. 04-131 Erie
              v.                        :
                                        :
ERIE COUNTY DISTRICT ATTORNEYS'        :        MAGISTRATE JUDGE
OFFICE, BRAD FOULK, ESQ., FIRST        :        PARADISE-BAXTER
ASSISTANT, D.A. ROBERT SAMBROAK        :
                          Defendants   :

**MOTION FOR SUMMARY JUDGEMENT PURSUANT TO Fed. R.C.P. 56(b) FILED ON
BEHALF OF DEFENDANTS, ERIE COUNTY DISTRICT ATTORNEY BRAD FOULK
AND ROBERT SAMBROAK**

AND NOW, this 31st day of October, 2005, comes defendants, Brad Foulk and Robert

Sambroak, by and through their counsel, Matthew J. McLaughlin, Esquire, and file this motion

for summary judgement pursuant to Fed. R.C.P. 56(b), stating in support thereof the following.

1.    Plaintiff, Buwlus A. Muhammad, has filed an amended complaint in the above captioned

      matter alleging that his civil rights were violated by defendants Bradley Foulk and Robert

      Sambroak.  He avers that he was charged with burglary and tampering with evidence and

      incarcerated, allegedly out of retaliation for plaintiff testifying at a preliminary hearing

      held on December 28, 2001, before District Justice Paul Urbaniak, on behalf of a criminal

      defendant, Tyshun Ronzel Taylor, who was charged with drug possession.

2.    At the preliminary hearing, plaintiff testified under oath that a street person named

      "Yackie" paid him $150 to "set up" the resident at 912 Wallace Street, Erie, Pennsylvania

      (Mr. Taylor's residence) by entering the apartment and placing a bag that contained a

      hard substance in a pair of pants that plaintiff found in the apartment.  Plaintiff

      unequivocally testified that he crawled through a window at 912 Wallace Street, placed

      the bag in a pair of pants and subsequently felt remorseful that Mr. Taylor had been

charged with drug possession.  Plaintiff conceded that he was aware that if he testified on behalf of Mr. Taylor, he could be criminally charged and admitted on cross examination that he was aware that he committed the crime of burglary by breaking into 912 Wallace Street and conceded that it was "possibly" a crime to set an individual up as he described at the hearing.  (See transcript of preliminary hearing dated December 28, 2001, attached hereto as Exhibit 1)

3.    The gravamen of plaintiff's amended complaint is that the criminal charges of burglary and tampering with evidence filed against him were pursued in retaliation for plaintiff testifying on behalf of Mr. Taylor and that there was no probable cause for plaintiff's arrest and subsequent incarceration.  However, plaintiff's admissions made under oath at the preliminary hearing that he committed the crimes of burglary and tampering with evidence in exchange for the payment of $150, establishes conclusively that probable cause existed for his arrest and incarceration.

4.    The evidence of record conclusively establishes that plaintiff cannot successfully prove at trial a violation of his civil rights arising out of his arrest and incarceration for burglary and tampering with evidence.

5.    The evidence of record conclusively establishes that defendants Foulk and Sambroak were carrying out their official duties as judicial officers in arresting and incarcerating plaintiff for burglary and tampering with evidence and therefore enjoy absolute immunity in the present case.  *See* Cleavinger v. Saxner, 574 U.S. 193 (1985); Hanig v. Odorioso 385 F.2d 491 (3rd Cir. 1967) It is well established that there is absolute immunity for prosecutorial activity.  Imbler v. Pachiman, 424 U.S. 409, 427 (1976)

2

6.    There are no material issues of fact and judgement should be entered in favor of

defendants Foulk and Sambroak, as a matter of law.


WHEREFORE, it is respectfully requested that this Honorable Court recommend that

defendant's motion for summary judgement pursuant to Fed. R.C.P 56(b) be granted and that

plaintiff's amended complaint, be dismissed, with prejudice.

Respectfully submitted,


S/ Matthew McLaughlin
Matthew J. McLaughlin, Esquire
Assistant Solicitor for Erie County
246 West Tenth Street
Erie, PA 16501
(814) 454-1010
Counsel for defendants, Bradley Foulk and
Robert Sambroak

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

* * * * * * * * * * * * *

COMMONWEALTH OF PENNSYLVANIA        )

        -vs-                )  No.

TYSHUN RONZEL TAYLOR                )

<u>APPEARANCES</u>:

Robert A. Sambroak, Jr., Esquire, for the Commonwealth

Gene P. Placidi, Esquire, for the Defendant


<u>TRANSCRIPT OF PROCEEDINGS</u>


Before the Honorable Paul Urbaniak, District Justice

Held in Central Court at the Erie County Courthouse

Friday, December 28, 2001, beginning at 9:16 a.m.

(Preliminary Hearing - Testimony of Paul Cooper, a/k/a

Buddas Mohammed)

Linda L. Latva, RMR, Official Court Reporter

**EXHIBIT**

1

The Witness - Paul Cooper, a/k/a Buddas Mohammed

2

1    AND NOW, on this 28th day of December, 2001,
the within matter came on for hearing before the Honorable
2    Paul Urbaniak, District Justice, Erie County, Erie,
Pennsylvania, with the presence of the parties and counsel
3    as listed herein.

4    (December 28, 2001, beginning at 9:16 a.m.)

5    (Partial transcript.)

6    (The defendant was present.)

7    THE COURT:  Swear him in.

8    (The discussion at sidebar was concluded.)

9    THE COURT:  At this time Attorney Placidi is

10    calling you to the stand to testify to the Court truthfully

11    as to what your statements have been.  The District

12    Attorney's office has made a statement to inform you that if

13    you were part of a crime and you're testifying to it as I

14    swear you in on your oath, that you will be charged for any

15    criminal activity that you're going to testify to at this

16    point in time, just so you're aware of those facts before

17    you begin to testify and before I swear you in.

18    THE WITNESS:  Yes.

19    THE COURT:  Do you understand what I'm telling

20    you?

21    THE WITNESS:  Yes, I do.

22    THE COURT:  Do you wish to proceed?

23    THE WITNESS:  Yes, I do.

24    THE COURT:  Raise your right hand.

25    THE WITNESS:  I'll affirm.

The Witness - Paul Cooper, a/k/a Buddas Mohammed

3

1              <u>PAUL COOPER, A/K/A BUDDAS MOHAMMED,</u>

2      being first duly called affirmed and testified as follows:

3                      THE WITNESS:  Yes, I affirm.

4                      THE COURT:  Have a seat, state your name and

5      occupation.

6                      THE WITNESS:  Buddas Mohammed, social club

7      owner and manager.

8                      THE COURT:  I'm sorry, I didn't catch -- I

9      thought your first name was Paul Cooper.

10                     THE WITNESS:  My legal name is Buddas

11     Mohammed.

12                     THE COURT:  Go ahead.

13                     MR. PLACIDI:  Your Honor, I think I just want

14     to make it clear on the record in lieu of your admonition to

15     Mr. Mohammed that he understands that I am not representing

16     him in this matter, I'm representing Mr. Taylor as I told

17     him yesterday on the telephone.

18                     THE COURT:  Do you understand that?

19                     THE WITNESS:  Yes, I do.

20                     THE COURT:  Okay.

21                     <u>DIRECT EXAMINATION:</u>

22     BY MR. PLACIDI:

23     Q       Sir, would you please state your name.

24     A       Buddas Mohammed.

25     Q       And is your birth name Paul Cooper?

The Witness - Paul Cooper, a/k/a Buddas Mohammed

4

1    A        Yes, I am.

2    Q        And at sometime in the past two to three weeks did

3    you get in contact with me regarding Tyshun Taylor?

4    A        Yes, I did.

5    Q        And how did you contact me, sir?

6    A        I think by phone first.

7    Q        And did you contact me at my legal office?

8    A        Yes, I did.

9    Q        And at that time did you indicate to me that you had

10   some information regarding the charges that Mr. Taylor was

11   facing regarding 912 Wallace Street?

12   A        Yes, I did.

13   Q        And did I arrange a meeting with you along with

14   Private Detective Jerry Phillips?

15   A        Yes.

16   Q        And did that meeting occur on December 17, 2001?

17   A        I believe so, yes, I believe so.

18   Q        And was that in my office at 502 West Seventh

19   Street?

20   A        Yes, it was.

21   Q        And did you come there voluntarily?

22   A        Yes, I did.

23   Q        And as I indicated in addition to myself being

24   present and yourself was Mr. Phillips present?

25   A        Yes, the private investigator.

The Witness - Paul Cooper, a/k/a Buddas Mohammed

5

1    Q        Right.

2    A        Yes, sir.

3    Q        All right.  And he was identified as a private

4    investigator?

5    A        Not to my knowledge, not at that time, no, sir.  I

6    was just introduced to him.  I didn't know he was a private

7    detective.

8    Q        Okay.  And could you tell me what you told me at

9    that meeting on December 17th at 2001?

10   A        I told you that a female came to me -- I think it

11   was that Monday on the second or the 3rd of December I think

12   it was somewhere around November, December -- November.  I

13   think her street name was Yackie.

14   Q        Okay.  And where did you meet this or where did --

15   A        I think at the place on 11th and Parade Street.

16   Q        What did this female say to you?

17   A        She was telling me she was being threatened by some

18   guys.

19            MR. SAMBROAK:  Judge, excuse me, now I'm going

20   to object here.  Now this is hearsay.

21            THE COURT:  Your response?

22            MR. PLACIDI:  Well, your Honor, it's not being

23   offered for the truth of the matter asserted, it's just

24   being offered as to why she approached him.  He doesn't have

25   to get into that.  It's not germane to our case anyway.

The Witness - Paul Cooper, a/k/a Buddas Mohammed

6

1          THE COURT:  Right, so let's move on to the
2    important points.
3    Q      (By Mr. Placidi)  Okay.  Did she tell you anything
4    or did she ask you to do anything at that time?
5    A      Well, she asked me to place -- she needed someone
6    set up.
7    Q      Okay.
8    A      Okay.
9    Q      And did she tell you the name of the person she
10   needed set up?
11   A      No, she didn't.
12   Q      Did she tell you where the person resided?
13   A      912 Wallace.
14   Q      Okay.  And did you agree to do it at that time?
15   A      No, I didn't.
16   Q      Okay.  Did you have a subsequent or conversation
17   with her after that Monday?
18   A      On a Wednesday.
19   Q      Okay.  And that Wednesday would have been December
20   5th of 2001?
21   A      I believe so, yes, sir.
22   Q      And could you tell us what happened, where that
23   conversation took place?
24   A      I think at 901 tavern, on 9th and Parade, I'm pretty
25   sure.

The Witness - Paul Cooper, a/k/a Buddas Mohammed

7

1    Q       And what time did the conversation take place?

2    A       Around eight o'clock, somewhere eight -- between

3    eight and nine o'clock.

4    Q       Okay.  And on the meeting on Monday with this person

5    named Yackie, did you have an agreement to meet her there at

6    that time?

7    A       Yes, I did.

8    Q       That would have been on December 5, 2001?

9    A       Yes, I'm pretty sure.

10   Q       And what time were you supposed to meet her?

11   A       You talking about on the 5th?

12   Q       Yes?

13   A       I think it was ten o'clock, somewhere around there

14   between eight and ten, somewhere around there.  I believe it

15   was ten o'clock.

16   Q       And you were supposed to meet her at 901 tavern, 9th

17   and Parade?

18   A       Yes, sir.

19   Q       And did you go there?

20   A       Yes, I did.

21   Q       And when you got there, was she there?

22   A       Yes, she was.

23   Q       Okay.  And tell us what happened after you met her?

24   A       She offered to pay me a hundred dollars to take a

25   package, I don't know what was in the package, and to go to

The Witness - Paul Cooper, a/k/a Buddas Mohammed

8

1    912 Wallace.   And she told me that if the door wasn't open,

2    the first window to the door would be open.   And I asked her

3    again whose residence was it and why was she doing this?

4    And she told me because someone had threatened her, to do

5    harm to her or her family, because of some cocaine, four to

6    six ounces of cocaine came up missing, and unless she set

7    this person up to prove that he had some involvement or

8    knowledge of it, that they would do her some serious harm.

9    And I told her I wasn't sure about this because -- and I

10   asked her how does she come -- why she come to me, and she

11   told me because, you know, she heard about me being offered

12   pay for other incidents in the past as far as the case that

13   is coming up in this January.

14   Q       Okay.   Did she offer you money to do this?

15   A       She offered me $150 just to go in and put a package

16   in the residence.

17   Q       Okay.   At some time did you agree to put the package

18   in?

19   A       I still was undecided.   She hadn't had the package

20   at that time.   She said she was waiting on it.   I again

21   asked her what the person's name was.   She refused and she

22   refused to tell me.

23   Q       At sometime that evening on December 5th of 2001 did

24   you agree to deliver the package for her?

25   A       I agreed to.

1    Q       Okay.  Did she pay you any money at that time?

2    A       A hundred dollars she did.

3    Q       Okay.  And did you in fact deliver the package to

4    912 Wallace Street?

5    A       At first I didn't.  No, I didn't.  It wasn't there.

6    She was waiting on it.  So she -- around close to eleven

7    o'clock I think she met somebody.  I told her I'd be back.

8    I came back.  She said close to eleven o'clock somebody

9    would be there around that time.  I came back close to

10   eleven o'clock, she pulled me back at 901, she gave me a

11   package and gave me $100 and told me she would give me the

12   other fifty when I come back.

13   Q       Okay.  When you came back from what?

14   A       Placing the package in the residence.

15   Q       Okay.  Did you place that package in that residence

16   then?

17   A       Yes, I did.

18   Q       And can you tell us how you did that?

19   A       Window by the first door, by the entrance.

20   Q       And you're talking -- by "window" you're talking

21   about a window at 912 Wallace Street?

22   A       Yes, uh-huh.

23   Q       And did you make entry through the window?

24   A       Yes, I did.

25   Q       Was the window unlocked?

The Witness - Paul Cooper, a/k/a Buddas Mohammed

10

1    A       Yes, it was.

2    Q       And where did you place the package when you went

3    inside?

4    A       At first I was skeptical.  I didn't know really -- I

5    just went in, I wanted to get in there and out of there.

6    There was a couch as soon as you come in the window with

7    some clothes all over the apartment, so I just -- the first

8    thing came to my mind:  Get it in, get out.  Was a pair of

9    dark pants on the love seat, small couch.  I just put it in

10   the pocket and I came out of there, came back out of the

11   window, went back out on the street.

12   Q       Do you know what pocket of the pants you put it in?

13   A       No, I don't.

14   Q       And were you able to make out the type of pants it

15   was?

16   A       Just dark, rough pants.

17   Q       Were they jeans-type pants?

18   A       Yes, uh-huh.

19   Q       And was anybody home when you went into the house?

20   A       No, there wasn't.

21   Q       At that time did you know whose house it was?

22   A       No, I didn't.

23   Q       And what did you do after you left the house?

24   A       I went back and she gave me $50.

25   Q       Okay.  Did you tell her that you completed what she

The Witness - Paul Cooper, a/k/a Buddas Mohammed

11

1   asked you to do?

2   A      No, I didn't tell her that.

3   Q      Well, did you tell her you would deliver the

4   package?

5   A      I didn't tell her anything, I just told --

6   Q      Gave you the $50.  And can you describe the package

7   that you delivered?

8   A      I don't have -- I really didn't see the package that

9   we well.  I just grabbed it and took off.  It was a thing

10  like a bag, something like a sandwich bag, but I didn't

11  really look at the package.  I didn't know what it was in

12  it.

13  Q      Do you know what was contained inside the bag?

14  A      No, I don't.

15  Q      Was it a clear bag?

16  A      It was dark out.  I couldn't really make out what

17  was in that package.

18  Q      Did you see any type of coloring inside the bag?

19  A      No, I didn't.

20  Q      Do you remember stating to Mr. Phillips and myself

21  that it appeared to have some type of silver package inside

22  it?

23  A      He stated that.  He asked me was it in a silver type

24  of package in there, and I told him I couldn't make out

25  clear what was in the package.

1   Q      Do you remember stating something that it felt like

2   crack cocaine inside it?

3   A      I told him pills, pills or something hard substance.

4   Q      And why did you contact me?

5   A      Because I feel remorseful after I found out what he

6   was -- someone was arrested for cocaine that resided at that

7   apartment.

8   Q      And how do you know that the package that you

9   delivered was the same package that --

10  A      I don't know that.

11  Q      What made you think that?

12  A      Because I did enter that apartment.

13  Q      And you entered that apartment on December 5th of

14  2001?

15  A      Yes, sir.

16          MR. PLACIDI:  That's all that I have, your

17  Honor.

18          THE COURT:  Go ahead.

19              CROSS-EXAMINATION:

20  BY MR. SAMBROAK:

21  Q      This Yackie person, what's her last name?

22  A      I don't know her -- I don't know her last name to be

23  quite honest, sir.

24  Q      What was your relationship with her?

25  A      I've been knowing her close to a year, running into

The Witness - Paul Cooper, a/k/a Buddas Mohammed

13

1    her on the streets on 11th and Parade.

2    Q       But you don't know her last name?

3    A       No, sir, I don't.

4    Q       Where does she live?

5    A       On the corner of 11th and Parade.  I think.

6    Q       How old is she?

7    A       About anywhere from 29 to 35, something like that.

8    Q       You don't have any relationship with her at all?

9    A       No, sir.

10   Q       Yet you would agree to carry a package that you

11   don't know what's in and break into somebody's house for

12   somebody you don't know?

13   A       I knew her to be scared at the time.  She was very

14   scared seriously about somebody doing something to her.  I

15   knew her well enough to know that if I was able to help her

16   out but I wasn't willing to get no one else in trouble

17   neither.  That's why I'm here.

18   Q       Well, you understand that by breaking into that

19   house, crawling through the window, you committed burglary,

20   don't you?

21   A       I didn't know if anyone stayed there, you know, for

22   actually.

23   Q       You knew you were committing a crime by going into

24   the house, right?

25   A       Yes, I did.

14

| | | |
|---|---|---|
| 1 | Q | Okay.  And you knew you were probably committing a |
| 2 | | crime by trying to set somebody up? |
| 3 | A | Possibly. |
| 4 | Q | Yeah.  But you don't know what was in that package? |
| 5 | A | No, sir, I don't. |
| 6 | Q | Did the package fit in your pocket? |
| 7 | A | I just -- I just jammed it in. |
| 8 | Q | The pants pocket? |
| 9 | A | Yes, sir. |
| 10 | Q | You didn't go into the bedroom at all? |
| 11 | A | No, sir. |
| 12 | Q | You just went into one room? |
| 13 | A | That's all. |
| 14 | Q | And you're saying the sofa was by the window? |
| 15 | A | Yes, it was. |
| 16 | Q | And whatever was in that package you just put it in |
| 17 | | somebody's pants pocket? |
| 18 | A | Right. |
| 19 | Q | Okay.  You didn't put anything anywhere else? |
| 20 | A | No, sir. |
| 21 | Q | You didn't have razor blades? |
| 22 | A | No, sir. |
| 23 | Q | You didn't have baggies with you? |
| 24 | A | No, sir. |
| 25 | Q | Okay.  Just so we're clear, you do understand you |

The Witness - Paul Cooper, a/k/a Buddas Mohammed

15

1   committed a crime breaking into that house?

2   A      Yes, sir.

3   Q      Okay.  And -- but you're telling us that you don't

4   know what you were carrying?

5   A      No, sir, I don't.

6   Q      But you do know you were involved in setting

7   somebody up?

8   A      Possibly, yes, uh-huh.

9   Q      Well, what do you mean "possibly."  That was the

10  whole reason this Yackie wanted you to do that, right?

11  A      Yes, uh-huh.

12  Q      By the way, Mr. Cooper, you have a pretty extensive

13  record for crimes involving dishonesty, don't you?

14  A      No, sir, I don't.

15  Q      You don't have any thefts?

16  A      Probably theft.  I can't see that as being

17  dishonest.

18         THE COURT:  Answer the question.

19  Q      (By Mr. Sambroak)  Do you have theft convictions?

20  A      One.  Yes, I do.

21  Q      Okay.  Do you have any robbery or burglary

22  convictions?

23  A      Prior, yes, uh-huh.

24  Q      Okay.  And what did you say you do for a living?

25  A      I run a social club and community social club.  I'm

The Witness - Paul Cooper, a/k/a Buddas Mohammed

16

1    a barber, also.

2    Q      If that's the case, what did you need the hundred

3    dollars for?

4    A      It was just someone from the street I feel that was

5    in the emergency situation, a female, and I fell for it.

6    Q      Don't you make your living as a professional snitch,

7    too?

8    A      Professional snitch?

9    Q      Uh-huh.

10          MR. PLACIDI:  I would object, your Honor.

11   A      If that's what you want to call it.

12          MR. PLACIDI:  I don't know the relevance.

13          THE COURT:  He's made an objection.  He's

14   calling for relevancy.  Your response?

15   Q      (By Mr. Sambroak)  Correct?

16   A      I didn't know if it's considered a snitch.

17          THE COURT:  Go ahead, tell us.

18          MR. SAMBROAK:  All right.  That's all that I

19   have.

20          MR. PLACIDI:  I have a couple questions.

21                     REDIRECT EXAMINATION:

22   BY MR. PLACIDI:

23   Q      Mr. Mohammed, did you have a conversation with me

24   yesterday?

25   A      Pardon me?

The Witness - Paul Cooper, a/k/a Buddas Mohammed

17

1   Q        Did you have a conversation with me on the telephone

2   yesterday?

3   A        As I recall.

4   Q        Did you express concern about testifying today?

5   A        Somewhat, yes, uh-huh.

6   Q        And I indicated to you that I was not representing

7   you because I was representing Mr. Taylor and I couldn't

8   advise you?

9   A        Yes.

10  Q        And notwithstanding the fact that you may be charged

11  with a crime, are you here testifying on behalf of

12  Mr. Taylor?

13  A        No, sir.

14  Q        Are you here testifying today on behalf of

15  Mr. Taylor?

16  A        Not to the fact that I would be committing a crime,

17  that I would be testifying for committing a crime.

18  Q        I understand that.  But notwithstanding the fact

19  that you may have committed a crime by going into that

20  house, you still are here testifying; is that correct?

21  A        Well, I mean, I'm in a situation now.  I took an

22  oath on it, you know.

23  Q        And the testimony you told today, is that the truth?

24  A        Yes, it is.

25                MR. PLACIDI:  That's all that I have.  Thank

18

1    you.

RECROSS-EXAMINATION:

3    BY MR. SAMBROAK:

4    Q      Mr. Cooper, why didn't you come to the police or to

5    the D.A.'s office about this?

6    A      Because, number one, I didn't want the D.A.'s office

7    to know that I had transgressed my trust, that I couldn't be

8    allowed to be used like that.  It's just something about

9    -- it's a trust there, you know, just like with the federal

10   government, you know, when I do something wrong, I call them

11   and I usually let them know.  I called Sean for the Federal

12   Bureau of Investigation.  I explained to him what had

13   happened, you know, and my remorse for it.  I let him know

14   that I'd probably get arrested for it but I told him I

15   didn't realize I was setting someone up and the way that it

16   came out.

17   Q      Did you talk to Sean VanSlyke about this?

18   A      Yes, uh-huh.

19   Q      You did?

20   A      Yes, uh-huh.

21   Q      You talked to him about this whole incident?

22   A      Yes, I mentioned it to him, yes.

23   Q      When?

24   A      I think it was about a week ago, about a week or two

25   weeks ago.

1   Q       Where did you talk to him at?

2   A       On the phone.

3   Q       You called him?

4   A       Yes, I did.

5   Q       You're sure about that?

6   A       Yes, I am.

7   Q       And did he know you were going to testify here

8   today?

9   A       I think I mentioned that.

10  Q       You're not sure, though?

11  A       I'm pretty sure I mentioned that.

12  Q       All right.  That's all.

13                  THE COURT:  Step down.

14  (The witness stepped down from the stand.)

15              MR. PLACIDI:  Nothing further, your Honor.

16              THE COURT:  Anything additional?

17              MR. SAMBROAK:  No.

18              THE COURT:  Close.

19  (End of partial transcript.)

20                  * * * * * * * * * * * *

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BUWLUS A. MUHAMMAD,          :
                    Plaintiff    :          Civil No. 04-131 Erie
        v.                   :
                             :
ERIE COUNTY DISTRICT ATTORNEYS'    :      MAGISTRATE JUDGE
OFFICE, BRAD FOULK, ESQ., FIRST    :      PARADISE-BAXTER
ASSISTANT, D.A. ROBERT SAMBROAK    :
                    Defendants    :

## CERTIFICATE OF SERVICE

I, Matthew J. McLaughlin, Esquire, do hereby certify that on the 31st day of October,

2005, a true and correct copy of the foregoing  motion for summary judgement  pursuant to Fed.

R.C.P. 56 (b), was served upon the following named person via United States first class mail,

postage prepaid, in accordance with the applicable Rules:


Buwlus Muhammad
c/o Erie County Prison
1618 Ash Street
Erie, PA 16503



Respectfully submitted,


S/ Matthew McLaughlin
Matthew J. McLaughlin, Esquire
Assistant Solicitor for Erie County
246 West Tenth Street
Erie, PA 16501
(814) 454-1010
Counsel for defendants, Bradley Foulk and
Robert Sambroak